## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KIDS 'R' KIDS INTERNATIONAL, INC.  )
                                        )
                                        )     Civil Action File No:
              v.                )
                                        )
ROBERT PHELPS, MARY PHELPS       )
KBBM MANAGEMENT, INC., d/b/a     )
KIDS 'R' KIDS #47, and RMP         )
MANAGEMENT, INC., d/b/a KIDS     )
'R' KIDS #45                          )

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES

This is an action for federal trademark infringement under the Lanham Act and for unfair competition and breach of contract. Comes now, Kids 'R' Kids International, Inc. ("KRK"), and files this, its Complaint for Injunctive Relief and Damages against Defendants Robert Phelps, Mary Phelps, KBBM Management, Inc., d/b/a Kids 'R' Kids #47, and RMP Management, Inc., d/b/a Kids 'R' Kids #45, respectfully showing the Court as follows:

### Parties

1.

Defendant Robert Phelps is, upon information and belief, a Georgia resident and may be served with process at his residence at 70 Springwater Shores, Newnan, Georgia 30265.

2.

Defendant Mary Phelps is, upon information and belief, a Georgia resident and may be served with process at her residence at 70 Springwater Shores, Newnan, Georgia 30265.  Defendant Robert Phelps and Defendant Mary Phelps are collectively the "Phelps Defendants."

3.

Defendant KBBM Management, Inc. ("KBBM"), is a corporation organized and licensed to do business in the state of Georgia, operates its principal office at 1367 Lake Ridge Parkway, Riverdale, Georgia 30296, and may be served through its registered agent Mary Phelps at 70 Springwater Shores, Newnan, Georgia, 30265.

4.

Defendant RMP Management, Inc. ("RMP"), is a corporation organized and licensed to do business in the State of Georgia, operates its principal office at 95 Creekwood Trail, Fayetteville, Georgia 30214, and may be served through its registered agent Robert Phelps at 70 Springwater Shores, Newnan, Georgia, 30265. Defendants KBBM and RMP are collectively the "Entity Defendants."

## Jurisdiction and Venue

5.

This Court is vested with jurisdiction over the parties and the subject matter of the action under 15 U.S.C. § 1121, 28 U.S.C. § 1331, 1338 and 1367(a).

6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  Venue is also proper here pursuant to the venue clause contained in the relevant Franchise Agreements executed by and between the parties which provide that "[i]n the event of any dispute between the parties arising out of or in connection with this Agreement and/or the operation of the Center Site, the parties agree that the proper forum for any cause of action shall be in either the Superior Court of Gwinnett County, Georgia or the United States District Court for the Northern District of Georgia, Atlanta Division."  A true and correct copy of the relevant Franchise Agreements are attached hereto as Exhibits "A" and "B".

## KRK'S TRADEMARKS

7.

KRK is a well-known childcare center franchisor.  The KRK brand has been in existence for over 26 years.

8.

KRK is the owner and registrant of numerous United States trademark registrations relating to KRK's unique system for the operation of childcare centers (the "KRK System").  True and correct copies of KRK's registrations are attached hereto at Exhibit "C" (the "Marks").  These registrations are valid, subsisting and incontestable.

9.

KRK has been commercially using the aforementioned Marks in connection with its business in interstate commerce for many years.  KRK has given notice of its registered rights by using the ® symbol in connection with its Marks.

10.

KRK has expended a substantial amount of money and effort in advertising and promoting its Marks in furtherance of its business.  KRK's substantial promotional, advertising, publicity, and public relations activities, done directly and through its franchisees, further promote the recognition and reputation associated with its Marks.

11.

KRK's Marks are inherently distinctive and/or unique and distinctive such that they have become associated with KRK in the mind of the public, and are relied upon by the public to identify the services provided in association therewith as having originated from KRK.  KRK's widespread and substantial use of its Marks has conferred upon KRK rights of such strength that KRK's Marks have become "famous" within the meaning of the Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

## THE RELATIONSHIP AND AGREEMENTS BETWEEN THE PARTIES

12.

On July 5, 1995, the Phelps Defendants entered into a Franchise Agreement with KRK to operate a KRK childcare center at 95 Creekwood Trail, Fayetteville, GA 30214, KRK #45 (the "July 5, 1995 Franchise Agreement").  On April 26, 1996, the Phelps Defendants assigned all their "rights, title and interests" in the July 5, 1995 Franchise Agreement to Defendant RMP, a corporation owned by the Phelps Defendants.  A true and correct copy of the July 5, 1995 Franchise Agreement and the Assignment of same to Defendant RMP, collectively, the "KRK #45 Franchise Agreement," is attached hereto as Exhibit "A."

13.

On January 10, 1998, the Phelps Defendants entered into a Franchise Agreement with KRK to operate a KRK childcare center at 1367 Lake Ridge Parkway, Riverdale, GA 30296, KRK #47 (the "January 10, 1998 Franchise Agreement"). On April 5, 1999, with KRK's approval, Defendant KBBM, a company owned by the Phelps Defendants, assumed the obligations of the franchisee under the January 10, 1998 Franchise Agreement. A true and correct copy of the January 10, 1998 Franchise Agreement and the associated Transfer Agreement and Assumption of Obligations to Defendant KBBM, collectively, the "KRK #47 Franchise Agreement," is attached hereto as Exhibit "B." The KRK #45 Franchise Agreement and the KRK #47 Franchise Agreement will be collectively referred to herein as the "Franchise Agreements".

14.

Pursuant to the Franchise Agreements, both KBBM and RMP operate day care centers for children under the name "Kids 'R' Kids", using the KRK System, as well as the KRK Marks.

15.

Both of the Phelps Defendants personally executed the subject Franchise Agreements.   Furthermore, as owners of the entity defendants, the Phelps Defendants are authorized agents of the Entity Defendants.

16.

The Phelps Defendants likewise personally guaranteed the obligations of both Entity Defendants as Franchisees.

17.

Defendant RMP operates KRK #45 at 95 Creekwood Trail, Fayetteville, Georgia 30214.   Defendant Mary Phelps serves as the Secretary of Defendant RMP, while Defendant Robert Phelps serves as the company's C.E.O.

18.

Defendant KBBM operates KRK #47 at 1367 Lake Ridge Parkway, Riverdale, Georgia 30296.   Defendant Mary Phelps serves as the Secretary, CEO and CFO of Defendant KBBM.

19.

Pursuant to the Franchise Agreements, KRK franchisees (including Defendants) have specific monetary obligations associated with their right to

operate day care centers under the name "Kids 'R' Kids," including the obligation to pay royalties and advertising fees to KRK.

20.

For example, section five of the Franchise Agreements sets forth the franchisee's royalty obligations to franchisor:

> (a) Amount. Franchisee shall pay to Franchisor, in cash, royalties ("Royalties") in an amount equal to five percent (5%) of the total Tuition Sales and Drop-in Sales . . . generated from the operation of the Franchise.
>
> . . .
>
> (c) Franchisee shall pay the Royalties to Franchisor in cash or by check, to be received by Franchisor not later than Friday of each week. Such Royalties shall be calculated from the Gross Sales of the immediately preceding calendar week, which week shall end at the close of business on Sunday. Franchisee shall submit to Franchisor . . . weekly royalty statements and sales data in the form, manner and frequency requested by Franchisor from time to time.

21.

Similarly, subsection (c) of section six of the Franchise Agreements requires the franchisee to pay the franchisor "a sum equal to one percent (1%) of Gross Sales for the previous week (the "Advertising Fees"). . . . All Advertising Fees shall be paid by Franchisee by Friday of each week calculated from the tuition and drop in sales of the immediately preceding calendar week."

22.

In addition, KRK requires that its franchisees operate their daycare centers pursuant to the strict guidelines of operation set forth in their individual franchise agreements with KRK.

23.

In that regard, by way of their franchise agreements, KRK franchisees agree to certain events of default, which render the franchise agreements terminable at KRK's election.   Section 17 of the Franchise Agreements provides, in relevant part, as follows:

(a)    <u>Events of Default: Termination</u>.  Franchisor may elect without prejudice to any other rights or remedies which it may have hereunder, at law or in equity, to terminate immediately the License and Franchisee's rights under this Agreement upon occurrence of any of the following, which shall constitute a default by Franchisee under this Agreement:

(i)    <u>Sums Due</u>.  Franchisee's failure to promptly pay any sum due pursuant to this Agreement or pursuant to any other transaction, obligation or indebtedness of Franchisee to Franchisor, within five (5) business days of the date due;

(ii)    <u>Standards</u>.  Franchisee's failure to operate the Center Site in compliance with the terms of this Agreement, the Manual, or any quality or operations standards or guidelines issued in writing by Franchisor from time to time, as well as all applicable federal, state and local laws, regulations, rules and ordinances, which failure is not corrected within five (5) business days after notice to Franchisee of such failure;

. . .

(vii)   Unfavorable Conduct.  Any . . . conduct by Franchisee which reflects materially and unfavorably upon the operation and reputation of Franchisor, the Business, or the Kids 'R' Kids System;

. . .

(ix)   Criminal Misconduct.  Franchisee, or any of its principals is charged with, convicted of, or pleads nolo contendere to, a felony or any other criminal misconduct, or any offense involving moral turpitude, which Franchisor deems relevant to the operation of the Business.

24.

Throughout KRK's franchise relationship with both RMP and KBBM, both entity Defendants repeatedly fell into default of both their royalty obligations and their advertising obligations to KRK as set forth in the Franchise Agreements.

25.

In April of 2013, KRK sent a notice of arrearage to both RMP and KBBM related to their failure to timely remit required royalty and advertising fee payments, as well as required weekly reports documenting same.

26.

On June 11, 2013, Pam Smith, a Quality Assurance Representative for KRK visited the KRK #47 center site to conduct a quality assurance review.  During her

review, Ms. Smith noted numerous areas in and upon the center site that were not in compliance with KRK's quality or operations standards.

27.

On June 13, 2013, Pam Smith, a Quality Assurance Representative for KRK visited the KRK #45 center site to conduct a quality assurance review.  During her review, Ms. Smith noted numerous areas in and upon the center site that were not in compliance with KRK's quality or operations standards.

28.

On June 14, 2013, Defendant Robert Phelps was involved in a physical altercation at the KRK #47 center site with an employee of KRK #47, Ms. Amber Schniel-Vaughn.

29.

According to the police report, Ms. Schniel-Vaughn reported that Defendant Robert Phelps slapped her with an open had across the face following a verbal altercation between she and Mr. Phelps.  Following the slap, a physical scuffle ensued between Ms. Schniel-Vaughn and Mr. Phelps (the "Physical Altercation"). Although Mr. Phelps advised the police officer that "the victim smacked him first and then he smacked her," the police officer interviewed several witnesses that "back[ed] up the victim's story."  To that end, attached to the police report are

witness statements from KRK #47 employees, Ms. Kenchika La'Chelle Winfield, Ms. Ay-Asia Cherry, Ms. Talishelia Taylor, Ms. Alexis Galovich and Ms. Claressa Pitts.   Each of these witness statements corroborates Ms. Schniel-Vaughn's allegations.

30.

The Physical Altercation occurred during the Kids 'R' Kids location's operating hours, in the presence of multiple employees, and in the presence of children.

31.

Upon information and belief, sometime during or after the Physical Altercation occurred, the police were contacted.   Once on the scene, Mr. Phelps was arrested and transported to the Clayton County jail.

32.

Mr. Phelps was later charged with one count of simple battery as a result of the Physical Altercation.

33.

Upon information and belief, subsequent to this Physical Altercation, Mr. Phelps threatened the Kids 'R' Kids employees at that location with suspension and/or termination for speaking of the matter, including to police investigators.

34.

Upon information and belief, the employees at the location felt threatened and insecure as a result of the actions of Mr. Phelps.

35.

The actions of Mr. Phelps became the subject of multiple news stories, in a variety of mediums, and positioned KRK in an extremely poor light, and caused and continue to cause KRK irreparable injury.

36.

These instances of conduct, each in isolation and when considered in their totality, are entirely unacceptable as actions of a KRK franchisee, and constituted immediate grounds for default, rendering the Franchise Agreements immediately terminable upon KRK's election.

37.

Aside from Mr. Phelps' conduct discussed herein above, both RMP and KBBM failed to timely pay monies due and owing to KRK.

38.

RMP and KBBM likewise failed to maintain their operations up to the conditions and standards they agreed to in the Franchise Agreements.

39.

KRK, by correspondence attached hereto as Exhibit "D", notified RMP and KBBM of this failure to pay monies due and owing.

40.

Despite these notifications, the arrearage remained uncured, and constituted defaults under the Franchise Agreements.

41.

In light of the tortious conduct of Mr. Phelps, as well as RMP and KBBM's continued refusal to cure the arrearages and subpar conditions of both facilities, on June 20, 2013, KRK terminated the Franchise Agreements. That notice of termination was delivered to Defendants by way of Federal Express and by regular mail, a true and correct copy of which is attached hereto as Exhibit "E".

42.

In the termination notices, KRK demanded immediate de-branding, which required, among other things, the cessation of operation of the locations as KRK facilities, the cessation of the use of any trade names, trademarks or other service marks similar to those owned by KRK, the payment of all past sums due and owing, and the removal of all signs, equipment or other materials bearing the marks of KRK.

43.

Despite the evident events of default, and despite the termination notice, Defendants failed and refused to recognize the termination of the Franchise Agreements and to comply with the de-branding demands set forth in the termination notices.

44.

Specifically, Defendants failed to remove and cease using KRK's Marks at and in promoting their childcare facilities.

45.

Upon information and belief, as owners and officers of the Entity Defendants, the Phelps Defendants are presently, and have been in the past, in control of the decisions of both Defendant KBBM and Defendant RMP at all times relevant hereto.

46.

Defendants' unauthorized use of KRK's Marks is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the respective parties as to (1) some presumed but nonexistent affiliation, connection, sponsorship or association of Defendants with KRK; and (2) the origin, sponsorship, or approval of Defendants' childcare services and KRK.

47.

Defendants' unauthorized use of KRK's Marks falsely designates the origin of Defendants' services, and falsely and misleadingly describes and represents Defendants' services.

48.

Defendants' unauthorized use of KRK's Marks enables Defendants to call attention to themselves and their services, and to trade on and receive the benefit of the goodwill built up at great labor and expense over many years by KRK, and to gain acceptance for their services not solely on their own merits, but as a free ride on the reputation and good will of KRK and its Marks.

49.

Defendants are being unjustly enriched at KRK's expense by their unauthorized use of KRK's Marks.

50.

Defendants' unauthorized use of KRK's Marks places the valuable reputation and goodwill of KRK's Marks in the hands of Defendants.

51.

Unless this Court immediately restrains these acts of Defendants, they will continue to cause irreparable injury to KRK and to the public, for which there is no adequate remedy at law.

52.

KRK has performed all conditions precedent or all conditions precedent have occurred necessary before the filing of this action in order to pursue each of the counts and claims that follow.

## COUNT I:  Breach of Franchise Agreement

53.

KRK incorporates by reference paragraphs 1 – 52 as if they are set forth verbatim herein.

54.

Defendants have breached the terms of the Franchise Agreements by:

- Failing to promptly pay sums due under the franchise agreements;

- Failing to operate the Center Sites in compliance with the terms of the franchise agreements;

- Engaging in conduct which reflects materially and unfavorably upon the operation and reputation of Franchisor, the Business, and the Kids 'R' Kids System;

- The arrest of the principal of the Defendants being charged with simple battery as a result of the Physical Altercation described herein; and

- Failing to comply with their obligations upon termination as set forth in the Franchise Agreements.

55.

KRK has been damaged as a result of Defendants' breach of the Franchise Agreements.

56.

KRK is entitled to recover damages from Defendants as a result of their breach of the Franchise Agreements.

57.

In addition, because Defendants continue to use KRK Marks in their childcare centers, despite KRK's termination of the Franchise Agreements, KRK has been irreparably harmed and there is no adequate remedy at law.

## COUNT II

## Infringement of a Federally Registered Mark (15 U.S.C. § 1114)

58.

KRK incorporates by reference paragraphs 1 – 57 as if they are set forth verbatim herein.

59.

Defendants have and continue to infringe upon KRK's federally registered Marks through their use in commerce of KRK's Marks in connection with the sale, offering for sale, marketing, or advertising of childcare services, with such being likely to cause confusion, or to cause mistake, or to deceive the public.

60.

The Phelps Defendants acted willfully and knowingly in causing the Entity Defendants to intentionally use the KRK Marks in their advertising, knowing that the Entity Defendants are unauthorized to do so. Defendants intended to infringe upon KRK's trademark rights in order to further their own business enterprise.

61.

Defendants have infringed and continue to infringe upon KRK's federally registered Marks as noted above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

62.

The use by Defendants of KRK's Marks has caused and will continue to cause serious and irreparable damage to the reputation and good will of KRK for which KRK is without an adequate remedy at law.

63.

Because of Defendants' intentional and unauthorized use of KRK's Marks, KRK has been injured and damaged, and is entitled to recover treble damages and attorney's fees under 15 U.S.C. § 1117(b).

### COUNT III (False Designation of Origin – 15 U.S.C. § 1125(a))

64.

KRK incorporates by reference paragraphs 1 to 63 as if they are set forth verbatim herein.

65.

The Phelps Defendants acted willfully and knowingly in causing the Entity Defendants to market, offer for sale, and sell into interstate commerce childcare services as a result of the Defendants' unauthorized use of the KRK Marks.

66.

Such activity of Defendants constitutes a false or misleading representation of fact which is likely to cause confusion, mistake or deception among consumers

that Defendants' businesses are licensed, sponsored, approved, associated with or otherwise entitled by KRK's name and Marks, when in fact, Defendants have no authorization or permission from KRK. The conduct of Defendants constitutes a false designation of origin, false description, and false representation that Defendants' services are sponsored, approved, or authorized by KRK, in violation of 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.

As a result of Defendants' activities, KRK's sales and profits have suffered, and it will continue to suffer irreparable injury to its business reputation and goodwill. KRK's remedy at law is not by itself adequate to compensate it for injuries inflicted and threatened by Defendants.

68.

By reason of Defendants' acts of false designation, description and representation described above, KRK has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet fully ascertained.

69.

Defendants' acts of false designation, description and representation have caused KRK irreparable injury. Defendants continue to commit such acts, despite notice, and unless restrained and enjoined, will continue to do so, to KRK's irreparable injury. KRK's remedy at law is not adequate by itself to compensate it for injuries already inflicted and continuing to be inflicted by Defendants.

## COUNT IV (Dilution – 15 U.S.C. § 1125(c))

70.

KRK incorporates by reference paragraphs 1 to 69 as if they are set forth verbatim herein.

71.

The Phelps Defendants acted willfully and knowingly through the Entity Defendants to cause dilution of the distinctive qualities of KRK's famous Marks in violation of 15 U.S.C. § 1125(c). Defendants have willfully and wantonly engaged in these acts in an intentional attempt to trade on KRK's reputation by using, without authorization, KRK's Marks, while having full knowledge of KRK's rights in and to its distinctive and famous Marks.

72.

Defendants' acts of unfair competition and misappropriation, unless enjoined by this Court, will continue to cause KRK to sustain irreparable damages, loss and injury, for which KRK has no adequate remedy at law.

## COUNT V (Violation of the Georgia Uniform Deceptive Trade Practices Act)

73.

KRK incorporates by reference paragraphs 1 to 72 as if they are set forth verbatim herein.

74.

Defendants, through their unauthorized use of KRK's Marks, have caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, as well as likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another, in violation of the laws of the State of Georgia.

75.

The facts alleged above, including Defendants' infringing acts with respect to the KRK Marks with the intent of deceiving the public, constitutes a deceptive trade practice in the course of business, in violation of the Georgia Uniform Deceptive Trade Practices Act (the "GUDTPA"), O.C.G.A. § 10-1-370 *et. seq.*

76.

The Phelps Defendants acted willfully and knowingly in causing the Entity Defendants to willfully violate the GUDTPA, with a total disregard for the rights of KRK.

77.

As a direct result of Defendants' deceptive trade practices, KRK has been injured and damaged, and is, pursuant to O.C.G.A. § 10-1-373, entitled to injunctive relief, costs, and attorneys' fees.

## COUNT VI (Violation of Common Law Unfair Competition)

78.

KRK incorporates by reference paragraphs 1 to 77 as if they are set forth verbatim herein.

79.

By reason of the foregoing, Defendants have engaged in unfair competition in violation of Georgia common law.

## PRAYER FOR RELIEF

WHEREFORE, KRK prays for judgment against Defendant as follows:

1) An order preliminarily and permanently enjoining and restraining the Phelps Defendants, the Entity Defendants, and all other officers, directors, agents,

affiliates, employees, or representatives of the Defendants, and all those acting in concert or participating with them, from directly or indirectly engaging in or performing any and all of the following acts:

a.  Marketing themselves as a KRK franchise;

b.  Making use of proprietary branding and operational information of KRK;

c.  Using any confidential methods, procedures, and techniques of KRK in operating their day care centers;

d.  Using or displaying in any manner signs, literature, display cards, promotional materials, or other materials related to Defendants and Defendants' services bearing the words "KIDS 'R' KIDS," or any other mark, word or name confusingly similar to KRK's federally registered Marks, and specifically, from using any sign, advertising material, stationary, forms, buses and any other articles that display the KRK logo;

e.  Using or displaying any words, terms, names, symbols, devices, or marks, including marks bearing the words "KIDS 'R' KIDS," or any other mark, word or name confusingly similar to KRK's federally registered Marks, which are likely to cause confusion, to cause

mistake, to deceive, or to otherwise mislead the trade or public into believing that Defendants' services are in any way connected with KRK;

f. Performing any act or using or displaying any words, terms, names, symbols, devices, or marks, including marks bearing the words "KIDS 'R' KIDS," or any other mark, word or name confusingly similar to KRK's federally registered Marks, which cause dilution of the distinctive qualities of KRK's famous Marks;

g. Performing any act, making any statement, or using or displaying any words, terms, names, symbols, devices, or marks, including marks bearing the words "KIDS 'R' KIDS," or any other mark, word or name confusingly similar to KRK's federally registered Marks, which unfairly compete with KRK by passing off or inducing or enabling others to sell or pass of services which are not KRK's services and are in no way connected with KRK.

2) An order directing the Phelps Defendants, the Entity Defendants, and all other officers, directors, agents, affiliates, employees, or representatives of the Defendants, and all those acting in concert or participating with them to immediately remove all signs, equipment or other materials bearing the

words "KIDS 'R' KIDS," or any other marks that are likely to be confused with KRK, and to deliver up for destruction all signs, advertisements, promotional materials, or other tangible materials which in any manner unlawfully use or make reference to KRK, including marks bearing the words "KIDS 'R' KIDS," or any other mark, word or name confusingly similar to KRK's federally registered Marks.

3) An order temporarily, preliminarily and permanently enjoining the Phelps Defendants, the Entity Defendants, and all other officers, directors, agents, affiliates, employees, or representatives of the Defendants, and all those acting in concert or participating with them, from operating their day care centers until such time as they have taken the actions requested in paragraphs 1 and 2 in this Prayer for Relief.

4) As a result of Defendants' willful and wanton activities, an order requiring that KRK recover from Defendants treble the amount of actual damages suffered by KRK, and all of its litigation expenses, including reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1117 and all other applicable laws.

5) That Defendants be ordered to pay to KRK: (a) all of their profits gained from their infringing conduct; (b) compensatory damages for the injuries

sustained by KRK by reason of the acts of infringement, false designation of origin, false advertising, and unfair trade practices and competition complained of herein.

6) Judgment awarding KRK damages, equitable relief, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper for Defendants' breach of the franchise agreements.

7) That pre and post-judgment interest be awarded at the highest rates allowed by law on all amounts awarded to KRK.

8) Judgment awarding KRK punitive and exemplary damages against Defendants by reason of Defendants' intentional or reckless disregard for KRK's rights and the rights of those defrauded by their unauthorized use of KRK's Marks.

9) An order awarding KRK such other and further relief as this Court may deem just and proper.

Respectfully submitted, this 23rd day of September, 2014.

**ANDERSEN, TATE & CARR, P.C.**

/s/ Elizabeth Clack-Freeman
James C. Joedecke, Jr.
State Bar No. 391885
Elizabeth Clack-Freeman
State Bar No. 126888

Robert D. Thomas 278646
State Bar No. 142327
Attorneys for Plaintiff

1960 Satellite Boulevard
Suite 4000
Duluth, Georgia 30097

## <u>VERIFICATION</u>

Personally appeared before the undersigned attesting officer, duly authorized by law to administer oaths, Patrick Vinson, who, after being duly sworn, deposes and states that the facts contained in the within and foregoing VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES are true and correct to the best of his knowledge.


_Janice Vinson_
Janice Vinson


Sworn to and subscribed before me
this _22_ day of September, 2014.


_Nancy N Freeman_
Notary Public


NANCY N FREEMAN
NOTARY PUBLIC
GWINNETT COUNTY
STATE OF GEORGIA
My Commission Expires Nov. 18, 2015